# EXHIBIT A – PART 1

72

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

MONTGOMERY _____ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | 11-05472 |

TIME STAMP

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

---

**SECTION A**

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

**Lead Plaintiff's Name:**
NEW CENTURY BANK

**Lead Defendant's Name:**
PUBLIC SAVINGS BANK

**Are money damages requested?** [x] Yes  [ ] No

**Dollar Amount Requested:** (check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes  [x] No

**Is this an *MDJ Appeal*?** [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney: Thomas W. Beaver (PA #32328)

- [ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

---

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [x] Other:
  Fraud

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other

- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

*Updated 1/1/2011*

Thomas W. Beaver, Esquire                                    Attorney for Plaintiff
I.D. No. 32328
*Rabenold, Koestel & Scheidt, P.C.*
501 Park Road North
P.O. Box 6263
Wyomissing, PA 19610
phone:  610-374-2103
fax:     610-374-9211
email:  tbeaver@rkslawfirm.com

| | | |
|---|---|---|
| NEW CENTURY BANK | : | COURT OF COMMON PLEAS FOR |
| Plaintiff | : | MONTGOMERY COUNTY, |
| | : | PENNSYLVANIA |
| | : | |
| vs. | : | CIVIL ACTION NO.  11-05472 |
| | : | |
| PUBLIC SAVINGS BANK | : | |
| and | : | JURY TRIAL DEMANDED |
| JACK MILLER, individually | : | |
| Defendants | : | Assigned to: |
| | : | |

## NOTICE TO DEFEND-CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCIATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19401
(610) 279-9660, EXTENSION 201

Thomas W. Beaver, Esquire
I.D. No. 32328
*Rabenold, Koestel & Scheidt, P.C.*
501 Park Road North
P.O. Box 6263
Wyomissing, PA 19610
phone:   610-374-2103
fax:      610-374-9211
email:   tbeaver@rkslawfirm.com

Attorney for Plaintiff

*MAIL RECEIVED*
*MONTGOMERY COUNTY*
*2011 MAR -9  A 8:50*

| | | |
|---|---|---|
| NEW CENTURY BANK | : | COURT OF COMMON PLEAS FOR |
| Plaintiff | : | MONTGOMERY COUNTY, |
| | : | PENNSYLVANIA |
| | : | |
| vs. | : | CIVIL ACTION NO.  11- 05472 |
| | : | |
| PUBLIC SAVINGS BANK | : | |
| and | : | JURY TRIAL DEMANDED |
| JACK MILLER, individually | : | |
| Defendants | : | Assigned to: |
| | : | |

## COMPLAINT

1.     Plaintiff is New Century Bank, a Pennsylvania state-charted banking corporation having its principal place of business at 99 Bridge Street, Phoenixville, PA 19460 (herein referred to as "Plaintiff" or "Bank").

2.     Defendant Public Savings Bank ("Public") is a Pennsylvania state-charted banking corporation having its principal place of business at 2755 Philmont Avenue, Suite 140, Huntingdon Valley, Montgomery County, PA 19006.

3.     Defendant Jack Miller ("Miller") is an individual having a place of business at 2755 Philmont Avenue, Suite 140, Huntingdon Valley, Montgomery County, PA 19006.

4.     At all times relevant to this Complaint, Miller was President and Chief Executive Officer of Public.

### COUNT I
### Fraud vs. Public

5.     The averments in Paragraphs 1 through 4 above are incorporated in this Count I by reference, as though set forth in full herein.



2011-05472-0000
3/9/2011 10:07:13 AM
Complaint Civil Action
Receipt # 2011-54-00524     Fee      $251.00
Mark Levy - Montgomery County Prothonotary



6.      Public financed two (2) equipment leases for Allied Health Systems, Inc. ("Allied"), on or about December 29, 2009 in the principal amounts of $250,000.00 each (referred to hereinafter as "Lease 8" and "Lease 9"), and a third equipment lease on or about January 7, 2010 in the principal amount of $250,000.00 ("Lease 10") (said lease financing hereafter being referred to as "Lease Finance No. 1").

7.      On or about January 7, 2010 Public sold, assigned and otherwise transferred the Lease Finance No. 1 to Plaintiff, pursuant to a certain "Participation Agreement," a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit "A" (the "Lease Finance No. 1 Participation Agreement").

8.      Payments with respect to Leases 8 and 9 were specified in the respective Lease to begin on January 29, 2010 (the "Lease 8 and 9 Payments").

9.      Payments with respect to Lease 10 were specified in the respective Lease to begin on February 7, 2010 (the "Lease 10 Payments").

10.     Pursuant to the Lease Finance No. 1 Participation Agreement, Public agreed to service the Lease Finance No. 1 for the benefit of and on behalf of Plaintiff.

11.     Beginning approximately February 1, 2010, Public offered to sell, assign and transfer to Plaintiff a second equipment lease finance for Allied in the amount of $500,000.00 (the "Lease Finance No. 2").

12.     On or about February 19, 2010 and prior to the Plaintiff paying Public for the purchase and assignment of Lease Finance No. 2, Plaintiff's loan officer, Eugene Zuecca, learned of an apparent delinquency by Allied with respect to Lease 8 and 9 Payments that were due on January 29, 2010.

13.     Upon learning of Allied's apparent delinquency referred to above, Mr. Zuecca emailed Public at 8:32 a.m. on February 19, 2010, requesting an explanation of the apparent delinquency.

14.     At 10:22 a.m. on February 19, 2010, nearly two (2) hours after Mr. Zuecca's inquiry at 8:32 a.m., Defendant Miller personally responded to the Zuecca email, in which he stated "I am sorry they paid us and we will be paid today... Sorry for the delay... we will make sure it does not happen today. Thanks. Jack." A true and correct copy of said the email request referred to in Paragraph 13 above, and Miller's response is attached hereto and incorporated by reference herein as Exhibit "B."

15.     As the servicer for Lease Finance No. 1, Public was in sole possession of accurate factual information concerning the payment status of the Lease 8 and 9 Payments due on January 29, 2010.

16.     Public's email response by Miller intentionally represented to Plaintiff that the Lease 8 and 9 Payments had been made on time, and were not and had not been delinquent.

17.     Public made the aforesaid representation knowing that Plaintiff would rely on it in purchasing the Lease Finance No. 2.

18.     Public made the aforesaid representation intending that Plaintiff would rely on it in purchasing the Lease Finance No. 2.

19.     Public made the aforesaid representation to Plaintiff either knowing it was false when made or with reckless indifference to whether it was true or not.

20.     Plaintiff and Public entered into a second Participation Agreement pertaining to the Lease Finance No. 2 (the "Lease Finance No. 2 Participation Agreement"), which although dated "as of February 18, 2010," is believed and therefore averred to have been signed on behalf of Plaintiff after receiving Defendant Miller's response email attached hereto as Exhibit "B". A true and correct copy of the Lease Finance No. 2 Participation Agreement is attached hereto and incorporated herein by reference as Exhibit "C."

21.     Plaintiff funded the Lease Finance No. 2 Participation Agreement on February 22, 2010 (the "No. 2 Participation Funding").

22.     Plaintiff relied on the aforesaid representation by Defendant Miller in entering into the Lease Finance No. 2 Participation and making the No. 2 Participation Funding on February 22, 2010.

23.     Plaintiff was entitled to rely on the aforesaid representation and did so reasonably and as intended by Public.

24.     It is reasonably believed and therefore averred that the Lease 8 and 9 Payments were in fact seriously delinquent, and that Public knew or should have known that they were or had been seriously delinquent when it represented to Plaintiff, in Defendant Miller's email on February 19, 2010, that "they paid us."

25.     Plaintiff actually received payment of its share of the Lease 8 and 9 Payments on February 24, 2010.

26.     The first Lease 10 Payment was due on February 7, 2010.

27.     Public has represented to Plaintiff that the first payment by Allied on Lease 8 and 9, i.e., the payment due January 29, 2010, was made on March 25, 2010. See Exhibit "D" attached hereto and incorporated by reference herein.

28.     Plaintiff received funds from Public representing Plaintiff's shares of the Lease 8 and 9 Payments due January 29, 2010 on February 24, 2010. Plaintiff believes and therefore avers that Public had not yet received the Lease 8 and 9 Payments due January 29, 2010 when it distributed Plaintiff's shares of those Payments to Plaintiff on February 24, 2010, and made that distribution from other sources of funds in order to conceal Public's fraud and misrepresentation in Defendant Miller's email on February 19, 2010.

29.     In approximately July 2010, Plaintiff learned that Allied and its founder/president, Charles Schwartz, had allegedly been perpetrating a fraudulent equipment lease finance scheme, which included the equipment leases which had been financed by Lease Finance No. 1 and Lease Finance No. 2.

30.     To Plaintiff's present information, knowledge and belief, said equipment lease financing fraud consisted of fraudulently prepared equipment lease documents where no such equipment was being purchased and no such equipment existed. The related equipment leases, therefore, were worthless when loan funds were advanced to finance the purported purchase and lease of said equipment.

31.     Charles Schwartz was charged by the F.B.I. on or about September 1, 2010, of perpetrating the alleged fraud described above.

32.     As a result of the alleged fraud described above, and the arrest of Charles Schwartz, both Allied and Schwartz filed bankruptcy in the Bankruptcy Court for New Jersey on or about August 19, 2010 (Case Nos. 10-35561 and 10-38816 respectively).

33.     At the present time, Plaintiff does not expect to recover any significant amount of money with respect to Lease Finance No. 1 or Lease Finance No. 2 in either of the above-described bankruptcies.

34.     Accordingly, Plaintiff estimates that it will suffer a loss of at least $482,458.00, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 2 Participation Agreement, plus lost interest income that it would have earned had the Lease Finance No. 2 been paid in accordance with its terms.

35.     But for Public's misrepresentation to Plaintiff on February 19, 2010 that Allied's payments under Lease Finance No. 1 for Leases 8 and 9 were not delinquent and had been made on time, Plaintiff would not have made the No. 2 Participation Funding.

36.     But for Public's misrepresentation to Plaintiff on February 19, 2010 that Allied's payments under Lease Finance No. 1 for Leases 8 and 9 were not delinquent and had been made on time, Plaintiff would not presently be facing a loss of at least $482,458.00, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 2 Participation Agreement, plus lost interest income that it would have earned had the Lease Finance No. 2 been paid in accordance with its terms.[1]

37.     Plaintiff was induced into entering into the Lease Finance No. 2 Participation Agreement and making the No. 2 Participation Funding by the misrepresentation on February 19, 2010 by Public and Miller that Allied had made its payments under Lease Finance No. 1, with respect to Leases 8 and 9, due January 29, 2010, on time, and that those payments were not delinquent, when in fact Public/Miller knew those payments had not be made, or had been paid several weeks late.

38.     Plaintiff was induced into entering into the Lease Finance No. 2 Participation Agreement and making the No. 2 Participation Funding by the misrepresentation on February 19, 2010 by Public and Miller that Allied had made its payments under Lease Finance No. 1, with respect to Leases 8 and 9, due January 29, 2010, on time, and that those payments were not delinquent, when Public/Miller made that representation with reckless indifference to the fact that those payments had not be made, or had been paid several weeks late.

39.     As a direct a proximate result of Defendant Public's fraud, Plaintiff has been directly damaged in an amount of at least $482,458.00, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 2 Participation Agreement, plus lost interest income that it would have earned had the Lease Finance No. 2 been paid in accordance with its terms.

---

[1]     Plaintiff is not alleging at this time that Public or Miller were active participants with Allied and/or Schwartz in, or actually knew of, the alleged Allied equipment lease finance fraud scheme at the time the Lease Finance No. 2 Participation occurred.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in its favor, and against Defendant Public, under this Count I, and thereupon Order entry of judgment in favor of Plaintiff for:

 1. compensatory damages in the amount of at least $482,458.00, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 2 Participation Agreement, plus

 2. compensatory damages for lost interest income that Plaintiff would have earned had the Lease Finance No. 2 been paid in accordance with its terms; and

 3. punitive damages for Defendant Public's outrageous conduct in such amount as the Court deems proper; and

 4. consequential damages including costs of this lawsuit in such amount as may be proved at trial.

## COUNT II
### Breach of Warranty  of no "Willful Misconduct or Dishonesty" by PSB as to Lease Finance No. 2

40. The averments set forth in Paragraphs 1 through 39 above are incorporated in this Count II by reference, as though set forth in full herein.

41. The Lease Finance No. 2 Participation Agreement contains the following warranty by PSB:

> *5(a) PSB hereby represents and warrant to Participant as follows: (i)*
> *... PSB's employees have not engaged in willful misconduct or dishonesty with respect the underwriting of the Lease Finance .....*

42 The Lease Finance No. 2 Participation Agreement also contains the following warranty by PSB:

> *5(a) PSB hereby represents and warrant to Participant as follows: (ii)*
> *... PSB has no knowledge of any event of default by a Borrower under any of the Lease Finance Documents ....*

43. As defined in the Lease Finance No. 2 Participation Agreement, the "Lease Finance Documents" include "the Lease and other instruments, agreements and

documents ... securing and/or relating to the Lease Finance." (Lease Finance No. 2 Participation Agreement, Background, ¶(a), p. 1)

44.     The Lease Finance No. 2 was secured pursuant to the terms of a Security Agreement dated February 18, 2010 between Allied and State Street. A true and correct copy of the Security Agreement is attached hereto and incorporated by reference herein as Exhibit "E".

45.     According to the Security Agreement, Allied would be in default thereunder due to:

> *10(d)   The failure of any Obligor to pay when due ... any indebtedness or obligation owing to any third party, the occurrence of any event which could result in acceleration of payment of any such indebtedness or obligation or the failure to perform any agreement with any third party ...*

46.     At the time Plaintiff entered into the Lease Finance No. 2 Participation Agreement with PSB and made the No. 2 Participation Funding, Allied was delinquent in making payments under Lease Finance No. 1 with respect to Leases 8 and 9 by at least twenty-four (24) days, and with respect to Lease 10 by at least seventeen (17) days.

47.     For the reason set forth above, Allied was in default under and with respect to Lease Finance No. 1 at the time PSB and Plaintiff entered into the Lease Finance No. 2 Participation Agreement and Plaintiff made the No. 2 Participation Funding.

48.     Plaintiff believes and therefore avers that PSB knew or should have known that Allied was in default under Lease Finance No. 1 at the time PSB and Plaintiff entered into the Lease Finance No. 2 Participation Agreement.

49.     In addition to the reason set forth above, when Jack Miller, speaking on behalf of PSB, stated to NCB's employee, Eugene Zuecca, on February 18, 2010, that the Lease 8 and 9 Payments had been made timely and were not delinquent, PSB breached the aforesaid representation and warranty contained in subparagraph 5(a)(ii) of the Lease Finance No. 2 Participation Agreement, that *"PSB has no knowledge of any event of default by a Borrower under any of the Lease Finance Documents ...."*

50.     Furthermore, when Jack Miller, speaking on behalf of PSB, stated to NCB's employee, Eugene Zuecca, on February 18, 2010, that the Lease 8 and 9

Payments had been made timely and were not delinquent, PSB breached the aforesaid representation and warranty contained in subparagraph 5(a)(i) of the Lease Finance No. 2 Participation Agreement, that "*PSB's employees have not engaged in willful misconduct or dishonesty with respect the underwriting of the Lease Finance ...."*

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in its favor, and against Defendant Public, under this Count I, and thereupon Order entry of judgment in favor of Plaintiff for:

1.      compensatory damages in the amount of at least $482,458.00, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 2 Participation Agreement, plus

2.      compensatory damages for lost interest income that Plaintiff would have earned had the Lease Finance No. 2 been paid in accordance with its terms; and

3.      punitive damages for Defendant Public's outrageous conduct in such amount as the Court deems proper; and

4.      consequential damages including costs of this lawsuit in such amount as may be proved at trial.

### COUNT III
### Breach of Warranty  of Conformity to
### "Applicable Law" by PSB as to Lease Finance No. 2[2]

51.      The averments set forth in Paragraphs 1 through 50 above are incorporated in this Count III by reference, as though set forth in full herein.

52.      The Lease Finance No. 2 Participation Agreement contains the following warranty by PSB:

> *5(a)(iv) ... the Lease Finance has been established and managed by PSB consistent with applicable law.*

---

[2]      In this Count III and Count IV following, Plaintiff is **not** attempting to assert private causes of action against Defendants with respect to the criminal statutes being cited. Rather, it is Plaintiff's position that Defendants' action in violation of those statutes constitute breaches of warranty under the Lease Finance No. 2 Participation Agreement.

53.    The following laws are "applicable laws" with respect to the above representation and warranty:

53.1    18 U.S.C. § 1343, "Fraud by Wire, Radio or Television,"

53.2    18 U.S.C. 1344, "Bank Fraud,"

53.3    18 Pa.C.S.A. § 4107(a), concerning "Deceptive or Fraudulent Business Practices," and

53.4    18 Pa.C.S.A. § 4114. Securing execution of documents by deception

54.    Federal law, *18 U.S.C. § 1343, "Fraud by Wire, Radio or Television,"* states:

> *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. 18 U.S.C. § 1343.*

55.    When Jack Miller, speaking on behalf of PSB, communicated by email to NCB's employee, Eugene Zuecca, on February 18, 2010, that the Lease 8 and 9 Payments had been made timely and were not delinquent, he violated the above referenced federal statute, in that:

55.1    his false communication to Plaintiff constituted a "*scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations...,*"

55.2    using email, which constitutes a "*means of wire, radio, or television communication in interstate or foreign commerce,* [and a] ... *writing...*"

55.3    which he sent *"for the purpose of executing such scheme or artifice, ... "*

56.    PSB therefore breached the aforesaid representation and warranty contained in subparagraph *5(a)(iv)* of the Participation No. 2 that "... *the Lease Finance has been established and managed by PSB consistent with applicable law,"* because that Lease Finance was actually established in violation of the federal law prohibiting wire fraud under 18 U.S.C. § 1343.

57.    18 U.S.C. 1344, "Bank Fraud," states:

> *Whoever knowingly executes, or attempts to execute, a scheme or artifice—*
>
> *(1) to defraud a financial institution; or*
>
> *(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution,*
>
> *by means of false or fraudulent pretenses, representations, or promises;*
> *shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.*

58.    When Jack Miller, speaking on behalf of PSB, communicated by email to NCB's employee, Eugene Zuecca, on February 18, 2010, that the Lease 8 and 9 Payments had been made on time and were not delinquent, he violated the above referenced federal statute, in that:

58.1    his false communication to Plaintiff constituted *"false or fraudulent pretenses, representations, or promises,"*

58.2    which he employed as a means to *"knowingly execute[], or attempt[] to execute a scheme or artifice—"*

58.3    either:

(1)    *to defraud* ... [Plaintiff] *financial institution; or*

(2)    *to obtain .... moneys, funds ... assets ... or other property...of, ...* [Plaintiff] *financial institution."*

59.     PSB therefore breached the aforesaid representation and warranty contained in subparagraph *5(a)(iv)* of the Participation No. 2 that "... *the Lease Finance has been established and managed by PSB consistent with applicable law,*" because that Lease Finance was actually established in violation of the federal law prohibiting bank fraud under 18 U.S.C. 1344.

60.     18 Pa.C.S.A. § 4107(a), concerning "Deceptive or Fraudulent Business Practices" under the Pennsylvania Crimes Code, states that:

> *"A person commits an offense if, in the course of business, the person:*
> *(6) makes or induces others to rely on a false or misleading written statement for the purpose of obtaining property or credit;*

61     When Jack Miller, speaking on behalf of PSB, communicated by email to NCB's employee, Eugene Zuecca, on February 18, 2010, that the Lease 8 and 9 Payments had been made timely and were not delinquent, he violated the above referenced Pennsylvania criminal statute, in that:

61.1    in the course of PSB's business

61.2    he made or induced Plaintiff

61.3    to rely on his written response transmitted by email to Plaintiff

61.4    for the purpose of causing Plaintiff to make the No. 2 Participation

Funding.

62.     PSB therefore breached the aforesaid representation and warranty contained in subparagraph *5(a)(iv)* of the Participation No. 2 that "... *the Lease Finance has been established and managed by PSB consistent with applicable law,*" because that Lease Finance was actually established in violation of Pennsylvania law prohibiting deception or fraud in business practices under 18 Pa.C.S.A. § 4107(a)(6).

63.     18 Pa.C.S.A. § 4114, "Securing execution of documents by deception" under the Pennsylvania Crimes Code, states that:

> *A person commits a misdemeanor of the second degree if by deception he causes another to execute any instrument affecting or purporting to affect or likely to affect the pecuniary interest of any person.*

64.     When Jack Miller, speaking on behalf of PSB, communicated by email to NCB's employee, Eugene Zuecca, on February 18, 2010, that the Lease 8 and 9

Payments had been made timely and were not delinquent, he violated the above referenced Pennsylvania criminal statute, in that:

       64.1   his deceptive statement

       64.2   caused Plaintiff

       64.3   to execute the Lease Finance No. 2 Participation Agreement, and/or instructions to make the No. 2 Participation Funding

       64.4   which affected the pecuniary interests of Plaintiff with respect to the No. 2 Participation Funding.

       65.   PSB therefore breached the aforesaid representation and warranty contained in subparagraph *5(a)(iv)* of the Participation No. 2 that "... *the Lease Finance has been established and managed by PSB consistent with applicable law,*" because that Lease Finance was actually established in violation of Pennsylvania law prohibiting persons from securing the execution of documents by deception under 18 Pa.C.S.A. § 4114.

       66.   All of the forgoing acts were committed by Defendant Miller while acting in his official capacity on behalf of Defendant PSB and for the benefit of Defendant PSB.

       67.   Defendant PSB did in fact benefit from the forgoing acts of Defendant Miller.

       68.   The foregoing acts of Defendant Miller are therefor the acts of Defendant PSB, his employer.

       WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in its favor, and against Defendant Public, under this Count I, and thereupon Order entry of judgment in favor of Plaintiff for:

       1.   compensatory damages in the amount of at least $482,458.00, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 2 Participation Agreement, plus

       2.   compensatory damages for lost interest income that Plaintiff would have earned had the Lease Finance No. 2 been paid in accordance with its terms; and

       3.   punitive damages for Defendant Public's outrageous conduct in such amount as the Court deems proper; and

4.      consequential damages including costs of this lawsuit in such amount as may be proved at trial.

## COUNT IV
### Fraud vs. Jack Miller

69.      The averments set forth in Paragraphs 1 through 68 above are incorporated in this Count IV by reference, as though set forth in full herein.

70.      The fraudulent acts described above may be attributed to Defendant Miller individually and personally under the doctrine of *participation*,[3] due to his direct and personal participation in fraudulently misrepresenting to the Plaintiff that Allied had made payments on the Lease Finance No. 1 on time, as described above.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in its favor, and against Defendant Public, under this Count I, and thereupon Order entry of judgment in favor of Plaintiff for:

1.      compensatory damages in the amount of at least $482,458.00, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 2 Participation Agreement, plus

2.      compensatory damages for lost interest income that Plaintiff would have earned had the Lease Finance No. 2 been paid in accordance with its terms; and

3.      punitive damages for Defendant Public's outrageous conduct in such amount as the Court deems proper; and

4.      consequential damages including costs of this lawsuit in such amount as may be proved at trial.

## COUNT V
### Fraud by PSB
### with respect to Lease Finance No. 1

71.      The averments set forth in Paragraphs 1 through 10 of this Complaint are incorporated in this Count V by reference, as though set forth in full herein.

---

[3]      See *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86; 1983.

72.     At the time Public was offering to sell the Lease Finance No. 1 to Plaintiff, Public knew or should have known that Allied had been consistently late in making payments due on prior loans which Public had made to Allied.

73.     At the time Public was offering to sell the Lease Finance No. 1 to Plaintiff, Public knew or should have known that Allied was 34 days late in making a payment due on November 24, 2009 on a prior loan which Public had made to Allied.

74.     In the Lease Finance No. 1 Participation Agreement (Exhibit "A" hereto), Public:

> ...hereby represents and warrant to Participant [i.e., Plaintiff] as follows: ... (ii) PSB has made available for the Participant's review *true and complete* copies of the Lease Finance Documents and its credit file and except as previously disclosed to the Participant, PSB has no knowledge of any event of default by a Borrower under any of the Lease Finance Documents....

75.     Neither the Lease Finance Documents nor Public's credit file concerning the Lease Finance No. 1 contained any information about Allied's serious delinquency with respect the payment referred to in Paragraph 73 above.

76.     Neither the Lease Finance Documents nor Public's credit file concerning the Lease Finance No. 1 contained any information about Allied's consistent payment delinquencies referred to in Paragraph 72 above.

77.     Plaintiff funded the Lease Finance No. 1 Participation Agreement on January 12, 2010 (the "No. 1 Participation Funding").

78.     Public withheld the information referred to in Paragraphs 75 and 76 above for the purpose of keeping Plaintiff from learning about Allied's impending financial problems before entering into the Lease Finance No. 1 Participation Agreement and/or making the No. 1 Participation Funding.

79.     Public withheld the information referred to in Paragraphs 75 and 76 above for fear that Plaintiff would not enter into the Lease Finance No. 1 Participation Agreement and/or make the No. 1 Participation Funding.

80.     Public withheld the information referred to in Paragraphs 75 and 76 above intending by its silence to induce Plaintiff to enter into the Lease Finance No. 1 Participation Agreement and make the No. 1 Participation Funding.

81.     Public withheld the information referred to in Paragraphs 75 and 76 above, intending by its silence to induce Plaintiff to rely on Public's credit file and the representation and warranty contained in the Lease Finance No. 1 Participation Agreement, and recited above, in deciding to enter into the Lease Finance No. 1 Participation Agreement and make the No. 1 Participation Funding.

82.     Public made the aforesaid representation knowing that Plaintiff would rely on it in entering into the Lease Finance No. 1 Participation Agreement and making the No. 1 Participation Funding.

83.     Public made the aforesaid representation to Plaintiff either knowing it was false when made or with reckless indifference to whether it was true or not.

84.     Plaintiff was entitled to rely on the aforesaid representation and did so reasonably and as intended by Public.

85.     As a direct cause of Public's fraud and misrepresentation described above, Plaintiff has been damaged in the amount of at least $693,685.41, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 1 Participation Agreement, plus lost interest income that Plaintiff would have earned had the Lease Finance No. 1 been paid in accordance with its terms.

86.     As a direct cause of Public's fraud and misrepresentation described above, Plaintiff has been required to expend additional funds in an effort to recoup its losses with respect to the Lease Finance No. 1 Participation Agreement and No. 1 Participation Funding.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in its favor, and against Defendant Public, under this Count I, and thereupon Order entry of judgment in favor of Plaintiff for:

1.     compensatory damages in the amount of at least $693,685.41, based on the unpaid principal amount outstanding with respect to the Lease Finance No. 1 Participation Agreement, plus

2.     compensatory damages for lost interest income that Plaintiff would have earned had the Lease Finance No. 1 been paid in accordance with its terms; and

3.     punitive damages for Defendant Public's outrageous conduct in such amount as the Court deems proper; and

4.     consequential damages including costs of this lawsuit in such amount as may be proved at trial.

_____
Thomas W. Beaver, Esquire
Attorney for Plaintiff

# EXHIBIT "A"

# Loan Participation Sale and Servicing Agreement

(Loan #2008Y4107.8.9.10)

THIS AGREEMENT made as of January 07, 2009 by **Public Savings Bank** , a Pennsylvania corporation with an office located at **2755 Philmont Avenue, Suite 140, Huntingdon Valley, PA 19006**, (herein called **"PSB"**) and **New Century Bank,** a corporation with an office located at **99 Bridge Street, Phoenixville, PA 19460** (herein called the **"Participant"**).

## BACKGROUND

(a)     As evidenced by that master lease and security agreement ("Master Lease") of, **Allied Health Care Services, Inc.** (the "Borrower"), dated as of **August 1, 2008** herewith, a true and correct copy of which is attached as **Exhibit "A"** hereto and made a part hereof, PSB has agreed to make a loan to the Borrower in the principal amount (the "Principal Amount") of **Seven Hundred and Fifty Thousand Dollars ($750,000.00)** (the "Loan"), pursuant to and on terms and conditions described in the Lease and other instruments, agreements and documents evidencing, governing, securing and/or relating to the Loan, the collateral therefore and any guarantees thereof, all of which were executed in connection with the Lease (the Lease and all such other instruments, including additions thereto, as amended or supplemented from time to time, being hereinafter collectively called the "Loan Documents"). All real and personal property in which PSB has been or may hereafter be granted a lien or security interest under the Loan Documents is hereinafter called the "Collateral."

(b)     PSB desires to sell and Participant desires to purchase a participating interest in the Loan, as well as a corresponding interest in any collateral for the Loan, including any real and/or personal property securing repayment and performance of the Loan, all other instruments, guarantees and suretyship agreements related to or executed at any time in connection with the Loan, and all proceeds of the foregoing.

( c)     As of the day of this Agreement, the outstanding balances of  Lease #8, 9 and 10  are **$750,000.00** plus accrued interest.

(d)     Participant acknowledges that it has reviewed the Loan Documents which evidence and secure the Loan and has made such other reviews and investigations of the Loan as the Participant deems appropriate to make a well-informed decision to purchase a participation in the Loan pursuant to this Agreement.

NOW, THEREFORE, intending to be legally bound and in return for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto covenant and agree as follows:

1.     Sale and Purchase of a Participation in the Loan

(a) PSB hereby agrees to sell, and Participant hereby agrees to purchase, on the terms and conditions herein provided, a participating interest (hereinafter referred to as "Participation" or "Participating Interest") in the Loan and in the Collateral therefore at a ratio that shall be determined when the loan is fully funded.

(b)     The outstanding principal amount of the Loan may be reduced from time to time as a result of the repayment of the Loan or the receipt of other payments from the Borrower or any guarantor thereof, and the amount of Participant's Participating Interest will thereupon be promptly adjusted in accordance with paragraph 2(a) below.

(c)     The proportionate interest of Participant in the unpaid principal balance of the Loan shall be equal to the proportion which the dollar amount of Participant's Participating Interest bears to the dollar amount of the outstanding principal balance of the Loan showing as outstanding on the PSB books.

(d)     The respective interests of PSB and Participant in the Loans and Collateral shall be pro-rata and neither interest shall have priority over the other.

2.     Notice of Loans

(a)     Unless waived by PSB, Participant will deliver to PSB in immediately available funds via wire transfer according to the instructions set forth on **Exhibit "E"** hereto, an amount equal to the Participant's Participating Interest in the Loan or advance prior to 2:00 p.m. on the date which the Loan is to be made. Regardless of the date on which PSB notifies Participant of the Loan and regardless of the date on which Participant provides fund to PSB for Participant's Participating Interest therein, Participant shall be deemed to have purchased the Loan, Loan Documents and Collateral to the extent of the Participant's Participating Interest at the time the Loan is made by PSB; however, Participants right to receive payments of interest on such advance shall be adjusted to and accrue from the later of the date specified in the notice or the date on which PSB receives funds from Participant

(b)     Except as set forth in paragraph 4 below with respect to interest payments on the Loan, all payments and recoveries received by PSB on account of the principal of and commitment and other fees on the Loan, and all other benefits, payments and recoveries received by PSB pursuant to the Loan Documents, including realizations on Collateral which PSB holds as security for the Loan and any payment from any party liable in any capacity in respect of the Loan, shall be applied pro-rata in accordance to **Exhibit "C"** attached hereto for the benefit of PSB and Participant in proportion to their respective Participating Interests. Any set-off by PSB against funds of any Borrower on deposit at PSB shall be applied by PSB first, or pro-rata with any of the PSB's credit extensions to Borrower, to the Loan or accrued interest thereon and expenses in respect thereof.

3.     Issuance of Participation Certificates.

(a)     Promptly following the making of the Loan by PSB pursuant to Section 2(a) above, or immediately after the execution of this Agreement, whichever comes later, PSB shall execute and deliver to Participant a certificate substantially in the form of **Exhibit " D"** attached hereto, evidencing the Participant's Participating Interest.

4.     Payment of Principal and Interest to Participant.

(a)     The Loan shall bear interest at the rate in effect from time to time pursuant to the Lease attached hereto **as Exhibit "A".** Participant's share of any interest earned under the Lease

shall be calculated pursuant to **Exhibit "C"** and shall be determined as follows: Participant's Participating Interest shall be deemed to earn interest, on the actual daily amount of Participant's Participating Interest in the Loan outstanding during each month, at the same rate per annum as is in effect during such month under the Lease, calculated in the same fashion as interest on the Loan is required to be calculated under the Lease. In the event the rate of interest under the Lease shall change during any month (for example, due to a change in PSB's Prime Rate of Interest if applicable under the Lease), the rate of interest on Participant's Participation shall change contemporaneously with each such change in the rate of interest under the Lease. As used herein, "PSB's Prime Rate of Interest" means the rate specified as such from time to time by PSB, and is not necessarily the lowest rate of interest charged by PSB. Participant's Participating Interest shall continue to earn interest after all Loan have been paid in full, until PSB has remitted to Participant the remaining amount of Participant's Participating Interest, at the rate per annum last in effect on the Loan.

(b)     Payment to the Participant on its Participating Interest is required to be made only from monies collected by PSB in respect of the Loan and, if no such monies are collected, PSB is not obligated to pay the Participant hereunder on its Participating Interest in the Loan. If less than the full amount of the monies due on the Loan is collected by PSB, from such monies that are collected, PSB shall pay a portion of the monies due on the Participant's Participating Interest and the monies due on the PSB's portion of the Loan determined by multiplying the amount of monies due each by a fraction the numerator of which is the amount of monies actually received by PSB ("Collections") and the denominator of which is the amount of monies due on the Loan.

(c)     PSB, upon receipt of Collections actually received from or on account of the Borrower, will promptly credit Participant's Participating Interest in such Collections to the account of the Participant and remit same to Participant within five (5) business days of receipt of the Collections from or on account of the Borrower. PSB will, at all times, keep proper books of account and records reflecting Participant's Participating Interest in the Loan, and will make such books and records available to the Participant, its agents and designees during business hours.

(d)     Any payments by the Participant to PSB with respect to the Loan will be paid by the Participant to PSB in immediately available funds no later than three (3) business days from the date of this agreement via wire transfer in accordance with the instructions set forth in **Exhibit "E"**. Participant will be entitled to its Participating Interest of all payments, recoveries and other amounts received by PSB in respect to the Loan (whether voluntary or involuntary).

5.     PSB's Representation and Warranties Concerning Loans.

(a)     PSB hereby represents and warrants to Participant as follows: (i) PSB has made the Loan referred to herein pursuant to the Loan Documents; PSB will maintain the Loan Documents for Loan in its main office; PSB's employees have not engaged in willful misconduct or dishonesty with respect to the underwriting of the Loan or the servicing thereof; and PSB has the authority to execute and deliver this Agreement; (ii) PSB has made available for the Participant's review true and complete copies of the Loan Documents and its credit file and except as previously disclosed to the Participant, PSB has no knowledge of any event of default by a Borrower under any of the Loan

Documents; (iii) PSB has not, as of the date hereof, except as previously disclosed to the Participant, assigned or otherwise transferred its interest in the Loan Documents and no other entity has an interest therein except for the interest of Participant, as provided herein, subject always to PSB right to subsequently sell and/or assign participations of its own interest in the Loan to third parties and PSB agrees to give written notice to Participant's within ten (10) days after a default by any Borrower; and (iv) PSB is authorized to sell the Participating Interests to the Participant and the Loan has been established and managed by PSB consistent with applicable law.

(b)     Other than the foregoing representations and warranties, PSB makes no representations or warranties, express or implied, and does not assume and shall have no responsibility or liability, expressed or implied. to Participant for the accuracy of any credit or other information given or to be given to PSB by Borrower, or the financial condition of Borrower or any obligor or guarantor of the Loan or Collateral since Participant hereby acknowledges that it has independently determined the foregoing in respect of all the Loan and has and shall continue to make its own appraisal of each Borrower's credit . worthiness. Participant hereby acknowledges that it is entering into this Agreement solely upon the basis of its own independent investigation and is not relying upon any information supplied by PSB other than that contained in the Loan Documents.

6.     Defaulted Loan and Sharing of Losses.

(a)     Participant shall bear its pro-rata share of losses sustained on the Loan in accordance with its Participating Interest. PSB shall, in the reasonable exercise of PSB's judgment, determine when a loss of the Loan has taken place and the amount thereof, but, for purpose of this Agreement, a loss must be taken by Participant as of a settlement date. In the event a recovery is realized by PSB on the Loan loss after Participant has taken its share thereof, then PSB shall, in the same manner as set forth in Section 4(c) hereinabove as if such recovery were actual Collections, pay Participant the same proportion of each such recovery as was borne by Participant in the loss. The obligation of PSB to pay Participant the latter's pro-rata share in the recovery of a loss shall survive termination of this Agreement.

(b)     PSB and Participant shall bear in proportion to their respective Participating Interests the costs and expenses incurred by PSB in collecting defaulted Loan, enforcing the Loan Documents or realizing on or liquidating the Collateral including, but not limited to, costs, expenses, fees or disbursements paid to outside agencies or attorneys retained by PSB to affect collection of the Loan, endorsement of the Loan Documents, or liquidation of or realization on the Collateral. If PSB recovers any costs or expenses of collecting the defaulted Loan, enforcing the Loan Documents, or liquidation or realization on the Collateral after Participant has reimbursed PSB for Participant's share thereof, PSB shall repay Participant the same proportion of such recovery as was borne by Participant in such costs or expenses.

7.     Servicing of Loan by PSB.

(a)     Except as provided in subparagraph 7(b) below, PSB agrees and Participant hereby acknowledges and agrees that PSB shall, in its own name, and to the extent of

Participant's Participating Interest, act as agent for Participant, to service the Loan, Loan Documents, and Collateral as lead institution and shall administer, service and manage or cause the Loan and Loan Documents to be administered, serviced and managed, in the ordinary course of the PSB's business.

(b)     The costs and expenses of such administering, servicing and managing the Loan, Loan Documents, and Collateral shall be borne by PSB, but such costs of administering and servicing shall not include costs and expenses incurred by PSB in collecting defaulted Loan, enforcing the Loan Documents and realizing on or liquidating the Collateral. In making the Loan and in performing the duties or administering, managing and servicing the Loan and Collateral, it is expressly understood and agreed that if PSB interest in the Loan is 50% or more than PSB shall retain all rights with respect to enforcement, collection and administration of the Loan, Loan Documents, and the Collateral, the performance and enforcement of the Loan Documents, including the exercise and enforcement of all privileges and rights thereunder for the benefit of PSB and Participant. If PSB's interest in the Loan is less than 50% and the Participant's interest in said Loan is more than 50%, then PSB will obtain Participant's approval prior to any actions of enforcement and or foreclosure and or liquidating of any Collateral relating to the Loan.

(c)     The duties of the PSB in servicing the Loan, Loan Documents, and Collateral are:

    (i)     While any Loan Documents are in the possession or custody of the PSB, to safely keep the same separate and apart from the PSB's own property;

    (ii)     To enter into refinancing, extension or other agreements for the resetting of payments on Loan only with the prior written consent of the Participant;

    (iii)     To keep full and complete records concerning the Loan in which Participant has purchased a Participating Interest hereunder and of all Collections and other moneys received by the PSB in respect thereto, and to submit reports to Participant (in the form agreed to by the Participant and PSB) concerning delinquencies, refinancing, and collections on (or un-collectibility of) the Loan, and all such reports shall be submitted at such times as Participant may reasonably request;

    (iv)     To receive and hold for the benefit of PSB and the Participant, to the extent of Participant's Participating Interest therein, all Collections received by PSB on account of the Loan and Collateral and to prepare and submit Settlement Schedules to Participant, as required by the provisions hereof;

    (v)     To mark its books and records so as to evidence Participant's Participating Interest hereunder; and to permit Participant's accredited representatives after receipt of written notice by PSB, during regular business hours, to examine PSB's books and records pertaining to the Loan purchased hereunder and to make extracts there from; and

    (vi)     To provide Participant with all financial statements and reports received by the PSB in respect of any Borrower or any guarantor, and all other pertinent information concerning the Loan of which the PSB becomes aware.

(d)     Notwithstanding the foregoing provisions of subparagraph 7 (b) above, the written consent of the Participant, which consent shall not be unreasonably withheld or delayed, is required to (i) grant any forgiveness of the payment of interest or principal of the Loan; (ii) increase the period of time after default within which the outstanding principal balance of any Lease evidencing the Loan must be repaid, (iii) release of any party primarily or secondarily liable on the loan, unless specifically provided for in the Loan Documents; (iv) release any collateral; (v) change the rate of interest or terms of payment on the Loan; or (vi) amend any of the documents governing, evidencing or securing any of the Loan.

(e)     If Participant is unwilling to consent to any amendment, modification, or waiver of compliance with, the Loan Documents for which Participant's consent is required, PSB shall have the right, but in no event any obligation, to repurchase Participant's Participating Interest in the Loan at such time for a purchase price equal to the unpaid principal amount of Participant's Participating Interest in the Loan plus accrued and unpaid interest thereon, and the Participant's share of expenses incurred under paragraph 6(b).

(f)     In connection with administering, servicing and managing the Loan, PSB shall exercise the same care as it exercises with respect to like transactions in which it alone is interested. In no event shall PSB, its directors, officers, agents or employees be answerable for any action taken or omitted to be taken, pursuant to any Lease, agreement, instrument, document, notice, request, consent or certificate given to it in connection with the Loan, the Loan Documents or the Collateral, where its actions or omission is in the belief that the same is genuine and duly executed by the proper person, firm or corporation. Nothing contained in this Agreement shall confer upon either PSB or Participant any interest in, or subject either party to any liability for, the assets or liabilities of the other, except with respect to the Loan and Collateral, as those terms are defined in this Agreement in which, and to the extent to which, Participant has purchased a Participating Interest hereunder.

8.   Increase in a Borrower's Loan - Substitution or Addition of New Participant - Other Transactions with Borrowers.

The parties hereto hereby expressly agree that PSB may, in its sole discretion, and without the prior approval, consent or agreement of the Participant accept deposits from, lend money to, act as trustee for and generally engage in any kind of business with Borrower, and with any person who may do business with or own securities of Borrower, and with any affiliate or subsidiary of either, all without any duty to notify or account therefore to the Participant, except that no such activity, either separately or in conjunction with any other activity of such party, shall violate any law, regulation or court order. However, in the event any collateral securing the Loan also secures any other indebtedness or liability to PSB, then such collateral and the proceeds shall be applied first toward satisfaction of the indebtedness and liabilities in respect of the Loan before becoming available to satisfy other obligations to PSB. PSB may not increase the amount of the Loan without the express written consent of the Participant, which may not be unreasonably withheld.

9.    Participant's Representations and Obligations Concerning Loan.

Participant represents and warrants to PSB that it has (i) thoroughly reviewed and evaluated the Loan Documents and the underlying transactions between PSB and Borrower, (ii) made its own investigation of all matters pertaining to the Borrower and the Loan and the Lease listed on Exhibit "A" including, without limitation, the financial condition and credit worthiness of each Borrower, in connection with such investigation it has obtained and reviewed such financial statements, reports, prospectuses and similar documents as it deems necessary to properly make an analysis of each Borrower and an evaluation of its credit worthiness, (iii) entered into this Agreement and is purchasing the Participating Interest, in reliance solely on its own independent investigation, evaluation and analysis of the Loan and Borrower and not on any representations made to PSB and Participant has the authority to execute and deliver this Agreement. During the term of this Agreement, Participant will continue to make its own analysis and evaluation regarding the financial condition and credit worthiness of the Borrower and shall not rely in this regard on any representations, analysis or evaluation made by PSB. (iv) Participant acknowledges that Public Savings Bank originated the loan and has established a business relationship with the Borrowers and or Guarantors of this loan. Participant represents and warrants that it will not conduct business or provide or solicit banking services to Borrowers and Guarantors of this loan with the written consent of Public Savings Bank.

10.   Law and Regulations Applicable to Loan.

If enactment or expiration of Legislation has the effect of rendering any provisions of the Loan Documents unenforceable, or if the transaction evidenced by this Agreement violates any applicable law or regulation, Participant hereby grants PSB the option to purchase the Participant's Participating Interest in the Loan for the outstanding balance thereof plus accrued and unpaid interest thereon and the Participant's share of expenses incurred under paragraph 6(b) after giving the Participant not less than five (5) days prior written notice specifying the law or regulation and stating the PSB's desire to purchase the Participant's Participating interest.

11.   Intentionally left blank

12.   Continuing Obligations of Parties After Termination of this Agreement.

Any termination of this Agreement, however, shall not affect the obligations and duties of the parties hereto existent at the time of termination, and the provisions of this Agreement shall continue to apply with full force and effect to all Loans made prior to the effective termination date.

13.   Notices.

(a)   All notices required or permitted to be given pursuant to this Agreement shall be in writing and shall be deemed delivered, if delivered by messenger, or if sent by certified mail, postage prepaid, return receipt requested, telegram or telefax addressed as follows, unless such address is changed by written notice hereunder:

| To PSB: | Public Savings Bank |
| | 2755 Philmont Avenue, Suite 140 |
| | Huntingdon Valley, PA 19006 |
| Attention: | Jo'Ann Washington |
| | Chief Credit Officer |
| | |
| To Participant: | New Century Bank |
| | 99 Bridge Street |
| | Phoenixville PA 19460 |
| Attention: | Eugene Zuecca |

14.   Integration.

This Agreement and the exhibits hereto embody the entire understanding between the parties hereto and supersedes any other prior or contemporaneous, oral or written, representation or agreement by the parties hereto, with respect to the matters which are the subject of this Agreement, and no change, alteration or modification hereof may be made except in writing signed by the parties hereto. Except as provided in this Agreement and the exhibits hereto, this Agreement supersedes any negotiations, discussions or communications between PSB and Participant and constitutes the entire agreement of PSB and Participant with respect to the Participant's Participating Interest, the Loan, and the Collateral and shall survive any foreclosure on any collateral and cannot be changed except by another separate signed writing by the parties hereto.

15.   Miscellaneous:

(a)   For all purposes, including for purposes of all applicable federal and state securities laws and regulations, PSB and the Participant expressly agree and acknowledge that a Participating Interest is not a security and the Participant and PSB do not treat or regard a Participating Interest as a security or interest in the nature of a security and the parties hereto do not regard the purchase or sale of any Participating Interest as the purchase or sale of a security. Neither the execution of this Agreement, nor the sharing in the Loan or Loan losses is intended to be, nor shall it be construed to be, the formation of a partnership, joint venture or similar association or undertaking of any kind between PSB and Participant. Nothing contained in this Agreement shall confer upon either PSB or Participant any interest in, or subject either party to any liability for, the assets or liabilities of the other, except with respect to the Loan and Collateral, as those terms are defined in this Agreement in which, and to the extent to which, Participant has purchased a Participating Interest hereunder. PSB shall not be liable for damages due to delay or failure to perform any obligation under this Agreement if such delay or failure results directly or indirectly from circumstances beyond the control of PSB. Such circumstances shall include, but shall not be limited to, acts of war, civil commotions, riots, strikes,

lockouts, acts of the government in either its sovereign or contractual capacity, perturbation in telecommunications transmissions, inability to obtain suitable equipment or components, accident, fire, water damages, flood, earthquake, or other natural catastrophes.

(b)     It is the intent and purpose of the parties hereto that this Agreement evidences a sale by PSB to the Participant of a Participating Interest in the Loan, the Collateral arising there from. This Agreement shall not be deemed to represent a pledge of any interest in the Loan by PSB to Participant or a loan by the Participant to PSB. This Agreement may be executed in several counterparts, and by the parties hereto on separate counterparts, each of which is an original but all of which together shall constitute one document.

16.     Severability and Applicable Law.

If any part of this Agreement shall be held to be void or unenforceable, such part or parts shall be treated as severable from the rest of this Agreement and the remaining parts of this Agreement shall remain in full force and effect. The invalidity or unenforceable of any provision hereof shall in no way affect the validity or enforceability of any other provision. This Agreement shall be construed in accordance with the laws of the State of Pennsylvania.

17.     Captions; Context of References to Making of Loan.

Paragraph titles or captions contained in this Agreement have been inserted only as a matter of convenience and for ease of reference and do not define, limit, extend, modify or describe the scope of this Agreement or the provisions hereof and shall be given no effect in the construction or interpretation of this Agreement.

18.     Information and Documents to be provided by PSB.

(a)     At the Closing of the Loan, or immediately upon execution of this Agreement, whichever is later, PSB will furnish to Participant duplicate originals of signed documents, and photo static or exact copies of all other Loan Documents. After the Loan Documents required to be placed of public record (including but not limited to the mortgage and security agreement, the financing statements, and the assignment of leases) have been returned to PSB, PSB will furnish to Participant copies of such filed documents and all replacements, modifications, renewals or refilling thereof.

(b)     During the term of the Loan, PSB will provide to the Participant within fifteen (15) days of receipt by PSB, copies of all financial statements, reports or other information required to be provided to PSB by the Borrower under the Loan Documents.

(c)     In the event enforcement of the Loan is required, Participant will be provided by the PSB, within fifteen (15) days of receipt of same by PSB, copies of all notices, correspondence, pleadings, transcripts, appraisals, experts' reports and all other information reasonably required by Participant to be kept informed of the enforcement proceedings.

19. See attached addendum
IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers the day and year first above written.

PUBLIC SAVINGS BANK

BY: _____

Jo'Ann Washington, Chief Credit Officer


NEW CENTURY BANK

BY: _____

Eugene Zuecca

EXHIBIT "B"

SETTLEMENT SCHEDULE:

Purchase of a Participation by

**NEW CENTURY BANK (the "Participant")**

in a Loan by

PUBLIC SAVINGS BANK

**To:** Allied Health Care Services, Inc.   **( 2008Y4107.8.9.10)**

Under a Loan Participation Sale and Servicing
Agreement dated as of **January 7, 2010** and as thereafter
amended.

(1)    Aggregate Outstanding Balance of the Loan on this Date –

|  |  |
|---|---|
| **Lease #8 outstanding balance =** | **$ 250,000.00** |
| **Lease #9 outstanding balance=** | **$ 250,000.00** |
| **Lease#10 outstanding balance=** | **$ 250,000.00** |

| **Aggregate Outstanding Principal Balance** | **$ 750,000.00** |
|---|---|

(2)    Participation Adjustment

(a)    Participant's Previous Participation .... $          0.00

(b)    Participant's Current Participation ***
         (Equal to 100% of line (1) ....................$   **$  750,000.00**
(c)    Less – amounts from Exhibit "C"       $          0.00

(d) Amount Due from Participant  ..............       **$  750,000.00**

The undersigned hereby certifies that the information contained in this Settlement Schedule is true and
correct.
\*\*\* See addendum to loan participation

PUBLIC SAVINGS BANK

BY: _____

Jo'Ann Washington, Chief Credit Officer

## EXHIBIT "C"
### Allocation of Principal Interest and Other Fees

| Interest ownership | Total | PSB | Participant |
|---|---|---|---|
| Loan and Collateral | $ 750,000.00 | 0% | 100% |
| Fee Points | | 100% | -0- |
| Annual Interest Rate % lease # 8,9,10 | 11.631% | 11.631% | 7.50% |
| Late fees | | 0% | 100% |
| Other fees | | 100% | -0- |
| Prepayment Penalties | | n/a | n/a |
| Legal and/or foreclosure costs | | 0% | 100% |
| Service Fees | | Included in interest | |

Public Savings Bank

By: _____
Jo'Ann Washington, Chief Credit Officer

Participant:

NEW CENTURY BANK

By: _____
Eugene Zuecca,

EXHIBIT "D"

$ __750,000.00__   Date: January 7, 2010

NON-NEGOTIABLE PARTICIPATION CERTIFICATE NO.

THIS IS TO CERTIFY THAT **NEW CENTURY BANK** ("Participant"), has a participation (the "Participation") equal to 100% of the outstanding balance in the Leases described herein of **$750,000.00**, made by the undersigned to Allied Health Care Services, Inc. pursuant to certain Loan Documents, and the Collateral therefore, the aggregate principal balance of the Participation therein on this date totaling __$ 750,000.00__

This certificate is issued pursuant to and is subject to the provisions of a certain Loan Participation Sale and Servicing Agreement dated **January 7, 2010** (herein called the "Participation Agreement"), between the undersigned and Participant.

The terms and words which are defined in the Participation Agreement and are used in this Certificate have the same meaning as in the Participation Agreement.

This certificate is not an acknowledgment of indebtedness and, except as provided in the Participation Agreement, may not be transferred or assigned either in whole or in part without the prior written consent of the undersigned. Such consent shall not be unreasonably withheld or delayed by Public Savings Bank. This Certificate supersedes all certificates of prior number and dates issued to participant pursuant to the Participant Agreement.

PUBLIC SAVINGS BANK

By: _____

Jo'Ann Washington, Chief Credit Officer

EXHIBIT "E"

### Wiring Instructions to PUBLIC SAVINGS BANK

**WIRE TO : PUBLIC SAVINGS BANK**

**ROUTING NUMBER (ABA) : 2319-7583-6**

**ACCOUNT NUMBER OF BENEFICIARY: 10001**

**AMOUNT : $  750,000.00**

**From : NEW CENTURY BANK**

**Reference: Participation Loan #-2008Y4107.8.9.10**